THE STATE OF OHIO, APPELLANT, *v.* MCGLOTHAN, APPELLEE.

[Cite as *State v. McGlothan,* 138 Ohio St.3d 146, 2014-Ohio-85.]

*Clarification of* State v. Williams *regarding the evidence necessary to establish cohabitation for purposes of R.C. 2919.25.*

(No. 2012-1782—Submitted October 23, 2013—Decided January 16, 2014.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 97212, 2012-Ohio-4049.

_____

O'DONNELL, J.

{¶ 1} The state of Ohio appeals from a decision of the Eighth District Court of Appeals affirming Jeffrey McGlothan's conviction for attempted felonious assault but reversing his conviction for domestic violence. Despite the victim's testimony that McGlothan was her boyfriend and had lived with her for about a year, a majority of the appellate court ruled that the state must prove they shared living expenses in order to convict McGlothan of domestic violence. The appellate court misconstrued our decision in *State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997), because in this case the state proved that the victim was a family or household member and proved cohabitation pursuant to R.C. 2919.25. Accordingly, the judgment of the appellate court is reversed and the judgment of the trial court finding McGlothan guilty of domestic violence is reinstated.

**Factual and Procedural Background**

{¶ 2} In February 2011, a grand jury indicted Jeffrey McGlothan on one count of felonious assault in violation of R.C. 2903.11(A)(1), with a repeat-violent-offender specification, and one count of domestic violence in violation of R.C. 2919.25(A) as a result of an incident at the apartment he shared with his girlfriend. The domestic violence count alleged that McGlothan knowingly

caused or attempted to cause physical harm to "Cynthia Robinson, a family or household member."

**{¶ 3}** During a bench trial in June 2011, Robinson testified that at the time of the incident, McGlothan was her boyfriend and had lived with her in her apartment for "about a year." She further explained that McGlothan slept overnight at her apartment every night. She also stated that he had helped her put things up on the wall when he moved into the apartment.

**{¶ 4}** Robinson testified that one evening in January 2011, she let McGlothan inside the apartment and confronted him about where he had been earlier that day. They began arguing, and McGlothan pushed Robinson and grabbed her by the shirt. As a result, he detached a permanent tracheostomy tube, which enabled her to breathe. McGlothan helped Robinson call 9-1-1, and emergency-room physicians were able to reinsert the tube without surgery. During trial, the court admitted Robinson's medical records, which contained her statement that "her boyfriend purposely pulled her trach out."

**{¶ 5}** The court found McGlothan not guilty of felonious assault, but guilty of attempted felonious assault and domestic violence. As a result, the court sentenced him to an aggregate two year prison term.

**{¶ 6}** On appeal, a majority of the appellate court held that the state had failed to present sufficient evidence to support McGlothan's conviction for domestic violence based on its analysis of our explanation of the term "cohabitation" in *Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126. The court explained, "Although Robinson testified that [McGlothan] was her boyfriend and he had slept over at her apartment for roughly a year, there was no testimony that the couple shared any living expenses, such as rent and utilities, which would demonstrate shared familial or financial responsibilities." 8th Dist. Cuyahoga No. 97212, 2012-Ohio-4049, ¶ 22. The dissenting judge did "not believe that it was necessary for the state to prove that the couple shared any living expenses when it

was established that McGlothan lived there." *Id*. at ¶ 47 (Boyle, J., concurring in part and dissenting in part).

{¶ 7} On appeal to this court, the state asserts that by requiring evidence of shared living expenses to demonstrate shared familial or financial responsibilities, the court of appeals elevated one of the nonexhaustive factors set forth in *Williams* to an essential element of cohabitation. It argues instead that shared living expenses is merely one factor that a court may consider in a cohabitation analysis. The state further maintains that the Eighth District's requirement of shared living expenses to establish cohabitation is contrary to decisions of the Second, Ninth, Tenth, and Eleventh Districts.

{¶ 8} In response, McGlothan claims that the appellate court did not hold that the state needed to prove shared financial responsibilities in order to establish cohabitation for purposes of R.C. 2919.25 but rather ruled that the state had failed to establish the cohabitation factors as set forth in *Williams.* Specifically, he argues that it was reasonable for the court to conclude that Robinson's testimony that he was her boyfriend and spent every night at her apartment was not by itself sufficient to prove cohabitation. Moreover, he maintains that the appellate decision here does not conflict with decisions from other appellate courts.

{¶ 9} In this case, then, we are called upon to clarify *Williams* regarding the evidence necessary to establish cohabitation as set forth in R.C. 2919.25(F)(2).

### Law and Analysis

{¶ 10} R.C. 2919.25(A) provides: "No person shall knowingly cause or attempt to cause physical harm to a *family or household member*." (Emphasis added.)

{¶ 11} R.C. 2919.25(F)(1) provides that "family or household member" means "(a) [a]ny of the following who is residing or has resided with the offender: (i) A spouse, a person living as a spouse, or a former spouse of the offender."

**{¶ 12}** At issue in this case is whether Robinson was a "person living as a spouse." R.C. 2919.25(F)(2) includes within the definition of "person living as a spouse" one "who * * * is cohabiting with the offender."

**{¶ 13}** The court of appeals misread our decision in *Williams* as supporting the proposition that evidence of shared living expenses is necessary to establish cohabitation. *Williams* is factually distinguishable from this case, because there we addressed living arrangements between the victim and the defendant that were markedly different from the circumstances here. In *Williams*, 79 Ohio St.3d at 460, 683 N.E.2d 1126, the victim testified that she and the defendant "were going together" but that they did *not* live together. The victim's testimony that for a few months she stayed more nights at Williams's place than at her own further illustrates that they did not share a residence but rather that each had a separate residence. *See id.* Thus, in order to prove cohabitation when the victim and the defendant do *not* share the same residence, evidence of shared financial or familial responsibilities and consortium is required. *See id.* at 463-465.

**{¶ 14}** After considering the General Assembly's intent in enacting the domestic violence statutes, despite urging by Williams himself, we declined to "adopt a narrow definition of 'reside' which would limit 'family or household members' to those who actually share one residential address." *Id.* at 462. In *Williams*, then, by determining that the offense of domestic violence "arises out of the relationship of the parties rather than their exact living circumstances," *id.* at 464, we interpreted the statute broadly to include those who did not live with the offender but who also deserved protection under the statute based on their relationship with the offender.

**{¶ 15}** In contrast to *Williams*, Robinson testified that McGlothan was her boyfriend and that they *had lived together in her apartment* for approximately a year, thus establishing that they did share one residence. Because the state

demonstrated that the defendant was the victim's boyfriend and that they had lived together for about a year, the state had no obligation to demonstrate the sharing of familial or financial responsibilities and consortium to prove cohabitation in this case. Instead, based on Robinson's testimony, the trial court could have reasonably determined that the state established cohabitation and thus that Robinson was a person living as a spouse with McGlothan. Because the evidence also demonstrates that Robinson resided with McGlothan at the time of the incident, the trial court could have reasonably concluded that Robinson was a family or household member.

{¶ 16} Alternatively, even if the *Williams* factors did apply regarding the nonexhaustive list establishing shared familial or financial responsibilities, circumstantial evidence shows that McGlothan and Robinson, by sharing her apartment for about a year, did share shelter and utilities. In addition, the trial court could have reasonably concluded that Robinson's testimony demonstrated factors establishing consortium, such as affection, society, and aid of each other. *Williams* at 465.

{¶ 17} Finally, we have explained that the General Assembly "recognized the special nature of domestic violence when it drafted the domestic violence statutes" and "believed that an assault involving a family or household member deserves further protection than an assault on a stranger." *Williams*, 79 Ohio St.3d at 463, 683 N.E.2d 1126. We have also acknowledged the desire of the legislature to "protect persons from violence by close family members or residents of the same household" and "to offer protections to a wide class of persons." *State v. Carswell,* 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 32, 36. In this regard, we recognize that McGlothan and Robinson were not strangers but rather lived together and were in a relationship from which the domestic violence arose. Therefore, considering the intent of the General Assembly in enacting the statute, we determine that Robinson was a person living

as a spouse and therefore, McGlothan's crime falls within the purview of the domestic violence statute.

{¶ 18} Accordingly, in this case, the state established that Robinson was a family or household member because her testimony demonstrates that she was a person living as a spouse who resided with McGlothan at the time of the incident. We therefore reverse the judgment of the court of appeals and reinstate the judgment of the trial court finding McGlothan guilty of domestic violence.

Judgment reversed.

O'CONNOR, C.J., and PFEIFER and KENNEDY, JJ., concur.

LANZINGER, FRENCH, and O'NEILL, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 19} I respectfully dissent. The majority reverses the judgment of the Eighth District Court of Appeals and "reinstate[s] the judgment of the trial court finding McGlothan guilty of domestic violence." Majority opinion, ¶ 18. However, in his appeal to the Eighth District, McGlothan raised the issue of allied offenses in his fifth assignment of error, which the court of appeals held was moot. 8th Dist. Cuyahoga No. 97212, 2012-Ohio-4049, ¶ 43. At the very least, the majority should remand the case to the court of appeals for resolution of McGlothan's fifth assignment of error on allied offenses.

{¶ 20} In addition, without expressly acknowledging the fact, the majority overrules a portion of *State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997). It now decides that merely living in the same residence will satisfy the element of cohabitation for the domestic-violence statute, stating that "[b]ecause the state demonstrated that the defendant was the victim's boyfriend and that they had lived together for about a year, the state had no obligation to demonstrate the sharing of familial or financial responsibilities and consortium to prove cohabitation in this case." Majority opinion, ¶ 15.

**{¶ 21}** Rather than clarifying *Williams*, this statement repudiates one of the cohabitation requirements set forth in *Williams*:

> [W]e conclude that the essential *elements* of "cohabitation" are *(1) sharing of familial or financial responsibilities and (2) consortium.* R.C. 2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. *These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier* of fact.

(Emphasis added.) *Id.* at 465.

**{¶ 22}** *Williams* clearly requires both elements: sharing familial or financial responsibilities as well as consortium. One witness testifying about living together for a year could satisfy both elements by indicating that there was a sharing of provisions for shelter or utilities and that there was society or companionship, provided that the fact-finder was satisfied that the evidence established these elements beyond a reasonable doubt. In this case, the court of appeals held that the state had not met its burden to show proof of cohabitation because there was insufficient evidence of shared living expenses. Nevertheless, it affirmed the finding of guilt on the offense of attempted felonious assault.

**{¶ 23}** There is no need to broaden the reach of the domestic-violence statute. Moreover, I believe that this appeal seeks mere error correction, and thus, I would dismiss the case as having been improvidently allowed.

_____

**FRENCH, J., dissenting.**

{¶ 24} I agree with the majority to the extent that it rejects the court of appeals' view that "cohabitation" necessarily requires proof that the victim and the offender shared living expenses, such as rent and utilities. As we made plain in *State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997), the first element of cohabitation requires proof that the offender and victim shared in either the "*familial or* financial" responsibilities of the household. (Emphasis added.) *Id.* at 465. Nevertheless, I dissent because I believe that the evidence did not show that McGlothan shared in either household responsibility. Robinson's testimony concerned only the second element of cohabitation, "consortium." It was neither direct nor circumstantial proof that McGlothan shared in any of the familial or financial responsibilities of the household. Because I would affirm the judgment of the court of appeals, I respectfully dissent.

O'NEILL, J., concurs in the foregoing opinion.

_____

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Mary H. McGrath, Assistant Prosecuting Attorney, for appellant.

Robert L. Tobik, Cuyahoga County Public Defender, and Erika Cunliffe, Assistant Public Defender, for appellee.

_____