[Cite as *Cleveland v. Johnson*, 2014-Ohio-4083.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
#### No. 100662

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## MICHAEL D. JOHNSON

DEFENDANT-APPELLANT

### JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2013 CRB 010854

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 18, 2014

**ATTORNEY FOR APPELLANT**

Steve W. Canfil
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113-1899


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law
City of Cleveland
601 Lakeside Avenue, Room 106
Cleveland, Ohio   44114-1077

BY:    Victor R. Perez
Law Department
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Michael Johnson ("Johnson"), appeals his domestic violence conviction. We find some merit to the appeal, reverse the trial court's judgment, and remand the case to the trial court for a new trial.

{¶2} Johnson was charged with one count of misdemeanor domestic violence. On the day of trial, Johnson informed the court that he would present two alibi witnesses. In response, the court stated, in relevant part: "Alibi is only when there's a question of identity. * * * This is not a question of whether or not you did it * * * it's whether or not it occurred." The court nevertheless permitted Johnson's alibi witnesses to testify.

{¶3} The victim, Samaiyah Pinkney ("Pinkney"), testified at trial that she and Johnson lived together for approximately one and a half years as boyfriend and girlfriend. After they broke up, Pinkney moved to Lorain County but frequently returned to Cleveland to visit her oldest sister. On April 17, 2013, Pinkney was walking down Detroit Road on her way to her friend Steve's house on West 83rd Street when she encountered Johnson. Johnson asked her why she still wanted to "hang around on Detroit." Pinkney testified that she said something to him as she continued walking and he attacked her. According to Pinkney, he punched her face, pulled her hair, and "smashed" her face into a brick wall. Pinkney subsequently called 911.

{¶4} Officer Richard Dembie ("Dembie"), who responded to the scene, testified that Pinkney was crying when he arrived. He observed a scratch on her chest, a bruise on

her arm, and redness on the side of her cheek that was "not swollen yet." Dembie took photographs of Pinkney's injuries, which were admitted into evidence.

{¶5} Johnson and his two alibi witnesses testified for the defense. Desiree Bell ("Bell"), Johnson's new girlfriend, testified that she was with Johnson at his home at the time Pinkney was assaulted. She further stated that Pinkney harassed her and Johnson by repeatedly calling their cell phones. According to Bell, Pinkney threatened that she was going to have "the Hough Boys jump" her and Johnson. Bell also stated that Pinkney stopped calling after the incident.

{¶6} Jason Stewart ("Stewart"), Johnson's cousin, stated that on the night of the incident, he, Bell, and Johnson spent the entire night at Johnson's house playing video games. Stewart also testified that he stayed at Johnson's house for a week and that he followed Johnson whenever he left the house because he did not want to be alone in the house with Johnson's girlfriend. He asserted that he was with Johnson all the time.

{¶7} Johnson corroborated Bell's testimony that Pinkney repeatedly called him and Bell and threatened that the "Hough Boys" were going to kill him. In February 2013, Johnson was shot in the leg, but there is no evidence the shooting was related to Pinkney's threats. Johnson testified that he was home with Bell and Stewart on the night of the incident.

{¶8} Based on this evidence, the trial court found Johnson guilty of domestic violence. In reaching the verdict, the court explained that it found the victim's testimony "extremely credible" as weighed against that of the defense. The court also again stated

that "you have an alibi when you don't know who the person is. There's no question that the complaining witness knows Mr. Johnson." Johnson now appeals and raises three assignments of error.

## Sufficiency of the Evidence

{¶9} In the first assignment of error, Johnson argues there was insufficient evidence to sustain his conviction. He contends the prosecution failed to present evidence as to all the elements of domestic violence because there is no evidence that Pinkney was Johnson's spouse, former spouse, or mother of his child.

{¶10} Johnson failed to move for acquittal during trial pursuant to Crim.R. 29 and has therefore waived all but plain error. *Cleveland v. Ellsworth*, 8th Dist. Cuyhaoga No. 83040, 2004-Ohio-4092, ¶ 7, citing *State v. Roe*, 41 Ohio St.3d 18, 25, 535 N.E.2d 1351 (1989). Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Notice of plain error should be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶11} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. In analyzing whether a conviction is supported by sufficient evidence, the court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶12} In this case, Johnson was charged with domestic violence in violation of R.C. 2919.25, which states in relevant part that "no person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25 defines "family or household member," in relevant part, as "[a] spouse, a person living as a spouse, or a former spouse of the offender"; or "a parent, a foster parent or another person related by consanguinity or affinity to the offender." R.C. 2919.25(F)(1). R.C. 2919.25(F)(2) defines "person living as a spouse" as:

> a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or *who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.*

(Emphasis added.)

{¶13} Johnson relies on *State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997), and *State v. McGlotham*, 138 Ohio St.3d 146, 2014-Ohio-85, 4 N.E.3d 1021, to support his argument that, to find a defendant guilty of domestic violence, the prosecution must prove the defendant was living with the victim at the time of the offense. However, in *Williams*, the Ohio Supreme Court considered factors relevant to determining whether a couple cohabited, including evidence of a couples' shared financial responsibilities. In *McGlothan*, the Supreme Court clarified *Williams* and held that evidence of shared

financial responsibilities is merely one factor among many that the factfinder may consider when deciding whether the victim qualifies as "a family or household member."

**{¶14}** Furthermore, the prosecution is only required to prove the elements set forth in the domestic violence statute. As the Supreme Court acknowledged in *McGlothan*, the legislature intended "'to protect persons from violence by close family members or residents of the same household' and 'to offer protections to a wide class of persons.'" *Id.* at ¶ 17, quoting *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 32, 36. Accordingly, the legislature extended the protection to victims who have lived with the defendant "within five years prior to the date of the commission of the act in question."

**{¶15}** In this case, Pinkney admitted that she had no children with Johnson. However, she testified that she lived with Johnson as boyfriend and girlfriend for "[a]bout a year or two." Johnson testified that they broke up in November of the preceding year — well within the five years provided for in the statute. Pinkney and Johnson were not presently cohabiting at the time of the assault. Therefore, there was sufficient evidence to establish that Pinkney was "living as a spouse" and a "household member" under the domestic violence statute.

**{¶16}** The first assignment of error is overruled.

### Alibi Defense

**{¶17}** In the second assignment of error, Johnson argues he was denied his constitutional rights to due process and the effective assistance of counsel when the trial

court misinterpreted and rejected his alibi defense. He contends that because the alibi was the cornerstone of his defense, the court's incorrect interpretation of it deprived him of a fair trial.

**{¶18}** The trial court rejected Johnson's alibi defense because the parties knew each other, and Pinkney identified Johnson as the perpetrator. However, an alibi "is a claim that you cannot be guilty of a crime because you were somewhere else when the crime was committed." http://merriam-webster.com/dictionary/alibi (accessed July 23, 2014). An alibi defense is a complete denial that the defendant committed an act. *State v. Coleman*, 8th Dist. Cuyahoga No. 99369, 2013-Ohio-4792, ¶ 15. It has nothing to do with whether the victim has properly identified the perpetrator of the crime. The trier of fact decides whether identification testimony is credible or not. If the identification testimony is credible, the factfinder may disbelieve the defendant's alibi defense or vice versa.

**{¶19}** The trial court clearly misunderstood the alibi defense. In explaining its verdict, the court stated, in relevant part:

> Given the facts submitted, the Court finds Mr. Johnson guilty. The fact of an alibi means * * * .

> [T]o me you have an alibi when you don't know who the person is. There's no question that the complaining witness knows Mr. Johnson.

Although the court further explained that it found Pinkney's testimony "extremely credible" and that the defense lacked credibility, it is impossible to determine how the court's misunderstanding of the alibi defense affected its judgment. Did the court's

perception of an alibi prejudice it against the defense? Would the court have found the defense more credible had it understood that an alibi defense applies even where the victim or some other witness identifies the defendant as the culprit? These questions leave doubt as to whether Johnson received a fair trial.

{¶20} Therefore, we sustain the second assignment of error.

{¶21} Having determined that Johnson is entitled to a new trial, the third assignment of error, which concerns Johnson's ineffective assistance of counsel claim, is moot.

{¶22} The trial court's judgment is reversed and the case is remanded to the trial court for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MELODY J. STEWART, J., CONCUR