[Cite as *State v. Stoneking*, 2021-Ohio-1307.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. CT2020-0043 |
| JEFFERY STONEKING | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:   Appeal from the Muskingum County
Court of Common Pleas, Case No.
CR2020-0243

JUDGMENT:                             Affirmed

DATE OF JUDGMENT ENTRY:    April 12, 2021

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

D. MICHAEL HADDOX                  TODD W. BARSTOW
Prosecuting Attorney                     261 W. Johnstown Road, Suite #204
Muskingum County, Ohio              Columbus, Ohio 43230

TAYLOR P. BENNINGTON
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth Street
P.O. Box 189
Zanesville, Ohio 43702-7123

*Hoffman, J.*

{¶1}   Defendant-appellant Jeffery Stoneking appeals his conviction and sentence entered by the Muskingum County Court of Common Pleas, on one count of domestic violence, following a jury trial.  Plaintiff-appellee is the state of Ohio.

### STATEMENT OF THE CASE AND FACTS

{¶2}   On June 17, 2020, the Muskingum County Grand Jury indicted Appellant on one count of domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree.  Appellant appeared before the trial court for arraignment on June 24, 2020, and entered a plea of not guilty to the charge.

{¶3}   The matter proceeded to trial on August 6, 2020.

{¶4}   Kaylee Hambrick, a dispatcher with the City of Zanesville, testified she answered a 9-1-1 call on May 20, 2020, relative to an incident at 808 Orchard Street, Zanesville, Muskingum County, Oho. The 9-1-1 call was played for the jury.  The caller, who was later identified as Ashley Rose-Gheen, told Hambrick she had given Narcan to Appellant and when he came to, he began throwing things at her.  Hambrick could hear a man's voice in the background.  She described him as "sounding aggressive; yelling and screaming."  Tr. at 161.

{¶5}   Ashley Rose-Gheen testified Appellant is her boyfriend and they have known each other since 2014.  Gheen and Appellant began dating in December, 2018.  Gheen stated, from that point, she and Appellant "stayed together most of the time."  Tr. at 167.  Gheen and Appellant moved to Columbus, Ohio, in January, 2019.  After a month and a half, Appellant returned to Zanesville.   Gheen also eventually returned to Zanesville. She and Appellant separated for a few weeks in July, 2019.  Thereafter, they moved into the apartment at 808 Orchard Street.   Gheen kept her belongings at the

Orchard Street residence and received mail at the address. On cross-examination, Gheen acknowledged her mail was sent to her father's address after she moved to Columbus, but explained she changed her address to Orchard Street in February, 2020.

{¶6} Gheen left at some point in January, 2020, as she and Appellant were not getting along. Gheen explained they were both using drugs and the drugs were taking priority over their relationship. At the beginning of February, Gheen moved back in with Appellant. She brought her clothing back with her to the residence. Both Gheen and Appellant stayed there every night. Gheen indicated she cleaned the house and shopped for groceries. Although she was not working at the time, she gave Appellant the stimulus money she received from the CARES Act. Gheen and Appellant had a sexual relationship.

{¶7} Gheen recalled, on May 20, 2020, she and Appellant took green monsters, which contain Xanax, and she slept most of the day. When she finally woke up, Gheen noticed Appellant was not waking up. Because Appellant did not respond to her attempts to rouse him, Gheen administered Narcan. Gheen described Appellant as "aggressive" when he came to. Tr. at 177. As Gheen started to run toward the kitchen, Appellant threw a scale at her. The scale struck her in the back of the head, causing Gheen to fall to the ground. Appellant strode toward Gheen, grabbed her by the hair, and punched her. Gheen broke free, ran outside into the parking lot, and called 9-1-1.

{¶8} Patrolman Jorden Blanton ("Ptl. Blanton") of the Zanesville Police Department testified he was working the midnight shift on May 20, 2020, when he was dispatched to 808 Orchard Street. Patrolman Harris ("Ptl. Harris") was already at the scene when Ptl. Blanton arrived. While Ptl. Harris spoke with Appellant in the bedroom,

Ptl. Blanton spoke with Gheen in the living room. Ptl. Blanton described Gheen as "very upset, crying, hysterical." Tr. at 211.

{¶9} After repeated efforts to calm Gheen down, she finally was able to explain to the patrolman what had occurred. Gheen stated Appellant had taken drugs and passed out. She thought he had overdosed. She administered Narcan. When Appellant regained consciousness, he was aggressive. Appellant threw an object at Gheen, striking her in the back of the head. Appellant began to strike Gheen with his fist. Gheen ran outside and dialed 9-1-1. Appellant followed Gheen to the parking lot and dragged her back into the apartment.

{¶10} After speaking with the police, Gheen agreed to complete a domestic violence form. Appellant was transported to the hospital due to the overdose. At the hospital, Appellant received two additional doses of Narcan. Appellant was admitted to the hospital and placed on a Narcan drip.

{¶11} After the state rested its case, Appellant made an oral Crim. R. 29 motion for acquittal, arguing the state failed to prove Gheen actually lived at the 808 Orchard Street address. The trial court denied the motion.

{¶12} Appellant testified on his own behalf. Appellant stated he had lived at 808 Orchard Street since July, 2019. He originally moved in to refurbish the apartment for his father. Appellant indicated he lived by himself, but Gheen "occasionally…would come in and out." Tr. at 223. Initially, Appellant stated Gheen only stayed on weekends, but later clarified she was there more than just weekends. Id. at 234, 242. Appellant added Gheen was usually at her father's house or in Columbus. Id. at 223.

**{¶13}** Appellant recalled an incident which occurred on May 19, 2020. Gheen had stayed overnight. When Appellant woke up, Gheen accused him of leaving during the night. An argument ensued, resulting in Gheen calling the police. The police arrived, but Gheen did not want to press charges. Gheen collected her belongings, "a little duffle bag", and left. Tr. at 224.

**{¶14}** Appellant rode around with his buddies during the day to clear his head. Appellant admitted he called Gheen. During the conversation, Gheen stated she was on her way back to 808 Orchard Street. When Appellant arrived, Gheen was already in the apartment. Appellant explained Gheen has her own key.

**{¶15}** Appellant admitted he had used methamphetamines earlier in the day on May 20, 2020. Later, he and Gheen took "green monsters." Appellant passed out. He described what occurred when he regained consciousness:

> Next thing I know I'm getting NARCAN, which you feel it. NARCAN is a – a boost of adrenaline.
>
> * * *
>
> I didn't know what was going on. I pushed her off of me. I seen the needle. Which, you know, what 'd you stick me with? And she's like NARCAN, NARCAN, calm down, calm down. And that's when I pushed her, just because I didn't know what was going on. I don't remember nothing.
>
> * * *

She goes outside, calls the ambulance as me being OD'ing. No ambulance never showed up.

Tr. at 229

**{¶16}** Appellant denied Gheen lived with him. He explained Gheen's wallet was stolen and her food stamp card was mailed to 808 Orchard Street, but Gheen received no other mail at the address.

**{¶17}** After hearing all the evidence and deliberating, the jury found Appellant guilty as charged. The trial court sentenced Appellant to a period of incarceration of 18 months. The trial court memorialized Appellant's conviction and sentence via Entry filed August 28, 2020.

**{¶18}** It is from this conviction and sentence Appellant appeals, raising the following assignment of error:

THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF DOMESTIC VIOLENCE AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (T. 165-206; 222-224; R. STATE'S EXHIBIT C1-C7; ENTRY, 8/28/20).

I

**{¶19}** In his sole assignment of error, Appellant challenges his conviction as against the manifest weight and based upon insufficient evidence.

**{¶20}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶21}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, supra at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶22}** "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212

(1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

**{¶23}** Appellant was charged with domestic violence, in violation of R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶24}** The term "household member" is defined by R.C.2929.25(F) as follows:

(F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

(ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶25} Appellant contends the evidence did not support a finding Gheen was a "[p]erson living as a spouse" as defined by R.C. 2919.25(F)(2). Appellant further asserts the state failed to establish the essential elements of "cohabitation" as set forth in *State v. Williams,* 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997), to wit: "(1) sharing of familial or financial responsibilities and (2) consortium." *Id.* at 465.

{¶26} *Williams* involved a defendant and victim who "were going together," but maintained separate residences. *Id.* at 460. In *State v. McGlothan,* 138 Ohio St.3d 146, 2014-Ohio-85, 4 N.E.3d 1021, the Supreme Court clarified *Williams* as strictly applying "when the victim and the defendant do *not* share the same residence[.]" *Id.* at ¶ 13 (Emphasis in original). The Supreme Court of Ohio further emphasized the domestic violence statute was enacted because the General Assembly "believed that an assault involving a family or household member deserves further protection than an assault on a stranger." *Id.* at ¶ 17, quoting *Williams* at 463, 683 N.E.2d 1126.

{¶27} "The burden of [production for] establishing cohabitation is not substantial." *State v. Long*, 9th Dist. Summit No. 25249, 2011-Ohio-1050, ¶ 6, quoting *Dyke v. Price,* 2d Dist. Montgomery No. 18060, 2000 WL 1546555 at *3. Reviewing courts "should be guided by common sense and ordinary human experience." *Id.* (Citation omitted). "[I]t is

a person's determination to share some measure of life's responsibilities with another that creates cohabitation." *State v. Carswell,* 114 Ohio St.3d 210, 871 N.E.2d 547, 2007–Ohio–3723, at ¶ 35.

**{¶28}** We find the state was not required to prove the *Williams* elements as there was sufficient evidence to support the jury's conclusion Gheen was a "person living as a spouse" who resided with Appellant at time he assaulted her.  We further find Appellant's conviction was not against the manifest weight of the evidence.

**{¶29}** Appellant's sole assignment of error is overruled.

**{¶30}** The judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Hoffman, J.
Baldwin, P.J.  and
Delaney, J. concur