[Cite as *State v. Tilman*, 2022-Ohio-3928.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No.  L-21-1238

        Appellee                             Trial Court No.  CR0202101760

v.

Antron Tilman                               **DECISION AND JUDGMENT**

        Appellant                            Decided:  November 3, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Patricia Horner, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Antron Tilman, appeals the November 3, 2021 judgment of the Lucas County Court of Common Pleas which, following a jury trial finding him guilty of domestic violence, sentenced him to 17 months of imprisonment. Because we find that the jury's verdict was supported by sufficient evidence and was not against the weight of the evidence, we affirm.

## I. Facts

{¶ 2} On May 25, 2021, appellant was indicted on one count of domestic violence with a prior conviction, R.C. 2919.25(A),(D)(1) and (D)(3), a fourth degree felony. The charge stemmed from the March 28, 2021 physical altercation between appellant and his girlfriend, T.C.

{¶ 3} On November 1, 2021, the matter proceeded to a jury trial and the following evidence was presented. Just after midnight on March 28, 2021, a Lucas County 9-1-1 operator received a call from victim T.C.'s mother, D.L., who stated that T.C. called her to tell her to call the police because her boyfriend was physically assaulting her. The 9-1-1 recording was played for the jury.

{¶ 4} T.C. testified that she met appellant in November 2020, and they began living together in her apartment the following month. T.C. stated that her six-year-old daughter lived with her as well. T.C. and her daughter were the only two listed on the lease. T.C. indicated that because she was living in HUD, or low income housing, she was not permitted to have appellant living with her if he was not on the lease. T.C. indicated that if the apartment manager found out that appellant was living there she would be in trouble.

{¶ 5} T.C. stated that appellant was receiving mail at her address from Lucas County Children's Services as well as credit card bills. T.C. identified a letter from children's services addressed to appellant at her apartment; it was admitted into evidence.

2.

T.C. stated that she, appellant, and her daughter would regularly share meals and time together, and they would spend time with each group of relatives. T.C. agreed that she and appellant had an intimate relationship and shared a bed. She stated that appellant "sometimes" helped with the household bills but acknowledged that his name was not on any of them. T.C. testified that the photographs admitted into evidence of garbage bags of clothes in her bedroom were appellant's as well as a bag of toiletries. She explained that her closet was already too full for him to put them away. T.C. admitted that she told police that appellant did not live in the home but that it was in the "heat of the moment."

{¶ 6} On the date in question, T.C .stated that she, her daughter, and appellant had been at the house of appellant's relative and that appellant had been drinking. Around 11:00 p.m., they decided to leave. Once home, T.C. got her daughter ready for bed and then the two went into their bedroom where appellant began questioning her about whether she liked his male cousin. T.C. stated that appellant was drunk and angry and began hitting her. T.C.'s daughter then entered the room; T.C. stated that she took her daughter, upset by the ruckus, back to her room and that appellant followed and struck her again. T.C. then went to the bathroom to assess her injuries and appellant choked her.

{¶ 7} Once appellant started to calm down he went downstairs to make some food. T.C. stated that she then called her mom and told her to call 9-1-1 because she did not want to be caught on the phone. Shortly thereafter, T.C.'s mom arrived, saw her injuries, and confronted appellant telling him that she had called the police and to leave.

3.

**{¶ 8}** As to her injuries, T.C. stated that following the incident she was transported to the hospital with complaints of her left eye swollen shut, her right front tooth loose, and jaw soreness. T.C. stated that her loose tooth required a root canal.

**{¶ 9}** T.C.'s mother, D.L., testified that in early 2021, she became aware that appellant was living in her daughter's apartment after appellant was consistently at the apartment when she visited and after seeing his personal belongings there. She admitted that when asked by the 9-1-1 operator whether T.C. and appellant lived together or had any children together she responded negatively.

**{¶ 10}** Around midnight on March 28, 2021, T.C. called her whispering and asked her to call 9-1-1. While on the phone with 9-1-1, D.L. began driving over to her daughter's apartment approximately seven minutes from her home. Upon arrival, she observed T.C.'s injuries; she confronted appellant and made him leave the home.

**{¶ 11}** Toledo Police officer Cole Decant testified that he responded to a call of a female being assaulted by her live-in boyfriend. Upon arrival, Decant stated that T.C., her mother, and T.C.'s daughter, who was upstairs sleeping, were inside the apartment. The suspect had fled on foot.

**{¶ 12}** Officer Decant testified that he observed T.C.'s eye to be blackened and nearly swollen shut and a cut and swelling on her upper lip. T.C. recounted that earlier in the evening, the pair had been at a relative of appellant's house and had been drinking. When they returned home they were arguing and T.C. was assaulted by appellant.

4.

Decant testified that the photos taken by his partner at the scene depicted appellant's injuries.

{¶ 13} When questioned about whether appellant lived at the residence, Officer Decant responded affirmatively and stated that appellant had property at the location. During cross-examination, appellant's counsel played a portion of Officer Decant's body cam video depicting his partner questioning T.C. and her response that appellant did not live with her. Decant admitted that he did not go upstairs at the residence and did not see any mail addressed to appellant on the first floor. Decant stated that his partner went upstairs where the bedrooms were located and photographed what appeared to be men's clothing in bags. Decant further stated that a background check revealed that appellant had a prior domestic violence conviction.

{¶ 14} The state's final witness was Toledo Police Detective Gary Michalski who investigated the incident. Detective Michalski was called to the hospital where T.C. was being treated for her injuries. The injuries and statements were consistent with those given earlier. Michalski testified that he explained to T.C. the difference between assault and domestic violence charges and that domestic violence required evidence that the victim is a family or household member. The detective determined that T.C. and appellant lived together based on information from the responding officers, T.C., and the men's clothing and personal items at the apartment. Detective Michalski further testified as to appellant's 2020 domestic violence conviction involving the mother of his daughter.

{¶ 15} Detective Michalski was cross-examined with his report where he had noted T.C.'s statement that appellant did not live at her apartment but often stayed there. Michalski admitted that there were contradictions in the evidence as to whether or not appellant lived at T.C.'s apartment.

{¶ 16} At the close of the state's evidence, appellant made a Crim.R. 29 motion for acquittal arguing that the state failed to sustain its burden. Denying the motion the court indicated that it was the jury's province to determine whether it believed the witnesses and, specifically, whether it believed T.C.'s explanation for her inconsistent statements as to whether appellant resided at the apartment —that she did not want to get in trouble for having an unauthorized tenant. Appellant's renewed Crim.R. 29 motion at the close of all the evidence was, likewise, denied.

{¶ 17} Relevantly, the jury was then instructed under the domestic violence statute:

> Person living as a spouse means a person who was cohabitating with the defendant or cohabitated with the defendant within five years before the alleged commission of the act in question.
>
> * * *
>
> Cohabit means living together at the same residence or, if not living at the same residence, the sharing of family or financial responsibilities and consortium.

6.

Family or financial responsibilities include such things as providing shelter, food, clothing and utilities and combining assets.

Consortium includes such things as mutual respect, fidelity, affection, society, cooperation, solace, aid to each other, friendship and sexual relations.

{¶ 18} Following deliberations, appellant was found guilty of the charge. This appeal followed.

## II. Assignments of Error

I. Appellant's domestic violence conviction is not supported by the evidence.

II. Appellant's conviction was against the manifest weight of the evidence.

## III. Discussion

### A. Sufficiency of the evidence

{¶ 19} In appellant's first assignment of error he argues that his domestic violence conviction was not supported by sufficient evidence where the state failed to prove beyond a reasonable doubt that appellant resided with the victim, T.C.

{¶ 20} Sufficiency of the evidence is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Under this standard of adequacy, a court must consider whether the evidence was sufficient to support the conviction as a matter

7.

of law. *Id.* The proper analysis is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 21} Appellant was convicted of domestic violence under R.C. 2919.25(A), (D)(1) and (D)(3), which provides:

> (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
>
> * * *
>
> (D)(1) Whoever violates this section is guilty of domestic violence, and the court shall sentence the offender as provided in divisions (D)(2) to (6) of this section.
>
> * * *
>
> (3) Except as otherwise provided in division (D)(4) of this section, if the offender previously has pleaded guilty to or been convicted of domestic violence, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to domestic violence, a violation of section 2903.14, 2909.06, 2909.07, 2911.12, 2911.211, or 2919.22 of the Revised Code if the victim of the

8.

violation was a family or household member at the time of the violation, a violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially similar to any of those sections if the victim of the violation was a family or household member at the time of the commission of the violation, or any offense of violence if the victim of the offense was a family or household member at the time of the commission of the offense, a violation of division (A) or (B) of this section is a felony of the fourth degree, * * *.

* * *

(F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

"Family or household member" means any of the following:

Any of the following who is residing or has resided with the offender:

A spouse, a person living as a spouse, or a former spouse of the offender;

* * *

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited

with the offender within five years prior to the date of the alleged

commission of the act in question.

R.C. 2919.25.

{¶ 22} Distilled, the state was required to prove that appellant knowingly caused or attempted to cause physical harm to T.C., a household or family member, and that he had a prior conviction under the statute or a similar statute. At issue in this case is whether T.C. was a household member; in other words, whether the two lived at the same residence or cohabitated. Evidence of cohabitation in the context of domestic violence "arises out of the nature of the relationship itself, rather than the exact living circumstances of the victim and perpetrator." *State v. Williams*, 79 Ohio St.3d 459, 464, 683 N.E.2d 1126 (1997). The *Williams* court held that the elements for cohabitation include the "sharing of familial or financial responsibilities and (2) consortium." *Id.* at 465. Such factors may be demonstrated by evidence of "provisions for shelter, food, clothing, utilities, and/or comingled assets" (familial or financial responsibilities) and "mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid for each other, friendship, and conjugal relations" (consortium.) *Id.*

{¶ 23} Clarifying *Williams*, the Ohio Supreme Court later held that in order to establish that a victim is a family or household member under the domestic violence statute the element of cohabitation need not be proven where evidence is presented that the parties lived together on the date of the offense. *State v. McGlothan*, 138 Ohio St.3d

10.

146, 2014-Ohio-85, 4 N.E.3d 1021, ¶ 13. The court explained that its holding in *Williams* reflected its observations that the crime of domestic violence does not require that the parties live together and may be established under the nonexhaustive factors it had enumerated. *Id.* at ¶ 14. *See State v. Matthews*, 6th Dist. Ottawa No. OT-14-031, 2015-Ohio-3297, ¶ 13. *See also State v. Fanelli*, 6th Dist. Wood No. WD-21-082, 2022-Ohio-3498, ¶ 42.

{¶ 24} Thus, the state was not required to prove the sharing of familial or financial responsibilities if appellant was residing in the home. Reviewing the evidence presented at trial in a light most favorable to the prosecution, while conflicting evidence was presented as to whether appellant lived in the home, the victim's and her mother's testimony as well as the evidence that appellant had clothing and personal items at the home and received mail at the home were sufficient to establish appellant as a household member. Appellant's first assignment of error is not well-taken.

*B. Manifest weight of the evidence*

{¶ 25} Appellant's second assignment of error asserts that his conviction was against the manifest weight of the evidence. Unlike sufficiency of the evidence, when reviewing a manifest weight claim,

> [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 26} Reviewing all the testimony and evidence presented at trial, we cannot say that the jury lost its way when it concluded that appellant resided with the victim. Competent, evidence was presented that the pair lived together and the jury's assessment that such evidence was credible did not create a manifest miscarriage of justice. Accordingly, appellant's second assignment of error is not well-taken.

## IV. Conclusion

{¶ 27} On consideration whereof, we affirm the November 3, 2021 judgment of the Lucas County Court of Common Pleas. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.            _____
                                                    JUDGE

Thomas J. Osowik, J.           

                                           _____
Christine E. Mayle, J.                                       JUDGE
CONCUR.

                                           _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.