[Cite as *State v. Joubert*, 2024-Ohio-5052.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JONATHAN JOUBERT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0023**

---

Criminal Appeal from the
County Court #4, of Mahoning County, Ohio
Case No. 2023 CR B 00623

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor and *Atty. Edward A. Czopur*, Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Robert T. McDowall,* for Defendant-Appellant

Dated: October 18, 2024

---

**WAITE, J.**

{¶1}   Appellant Jonathan Joubert appeals his conviction for misdemeanor domestic violence.  He argues that one of the elements necessary to convict him of domestic violence is that he and the victim were cohabitating.  He contends that there was insufficient evidence of cohabitation in this matter.  Appellant argues that the victim had not been continuously living with him in the five years prior to the crime, and therefore, the state had to prove additional factors as set forth in *State v. Williams*, 79 Ohio St.3d 459 (1997).  Appellant is incorrect.  There is no requirement in the domestic violence statute, R.C. 2919.25, that the parties must have continuously lived together in the five years prior to the crime in order to prove cohabitation.  The state proved that the victim lived with Appellant in a romantic relationship for about a year just prior to the attack.  The state did not need to provide proof of the additional factors of cohabitation listed in *Williams*.  Sufficient evidence on all the essential elements of the domestic violence statute was introduced in this case.  Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

<u>Facts and Procedural History</u>

{¶2}   On October 31, 2023, Appellant was charged with one count of domestic violence pursuant to R.C. 2919.25(A), a first degree misdemeanor, in Mahoning County Court #4, in Austintown.  The charge arose from an incident that occurred on October 30, 2023 at an Advance Auto Parts store in Austintown.  Appellant and the victim had been romantic partners and were living together at his house for approximately a year before they broke off the relationship on October 24, 2023.  After they broke up, Appellant told the victim to meet him at his house so that she could retrieve her personal belongings.

<u>Case No. 24 MA 0023</u>

The victim drove to her place of employment, Advance Auto Parts, to pick up a friend prior to going to Appellant's house. While the victim was at Advance Auto Parts, Appellant arrived there.

{¶3} The victim was in the store when Appellant arrived. He entered the store, then went out and threw her belongings on the ground next to her Jeep. When Appellant entered the victim's vehicle without permission, she told him to get out. As he stepped out, he began yelling at the victim and then struck her, injuring her face, before driving away. She called the police to report the attack, which led to the domestic violence charge.

{¶4} A bench trial was held on January 31, 2024. The state called three witnesses at trial: the manager of Advance Auto Parts, an employee of Advance Auto Parts who was a friend of the victim, and the victim. Appellant testified in his own defense. At the close of the state's case, Appellant moved to dismiss the charge on the basis of insufficient evidence. The motion was overruled. The court found Appellant guilty of domestic violence and sentenced him to 30 days in jail with 20 days suspended, 12 months of reporting probation, and a $250 fine. This timely appeal followed.

ASSIGNMENT OF ERROR

THE RECORD CONTAINS INSUFFICIENT EVIDENCE THAT APPELLANT AND [VICTIM] WERE HOUSEHOLD OR FAMILY MEMBERS TO BRING THE UNDERLYING CONDUCT WITHIN THE PREVIEW OF R.C. 2919.25(A) COMMONLY KNOWN AS DOMESTIC VIOLENCE.

**{¶5}** Appellant contends that there is insufficient evidence to support his conviction for domestic violence. Specifically, Appellant argues that the evidence does not support the conclusion that Appellant and the victim cohabitated or lived together within five years of the date of the crime. When the victim of domestic violence is a "person living as a spouse," the state must prove either that the perpetrator and victim lived in a common law marriage arrangement or that they cohabited. R.C. 2919.25(F)(2). Appellant and the victim were not married at common law, and thus the state needed to prove that they were cohabitating. Appellant cites a number of factors set forth in *Williams*, *supra*, that must be proven in some domestic violence cases when the victim and the perpetrator are purportedly cohabitating but have not actually lived together prior to the act of violence. Appellant contends that the victim did not share living expenses with Appellant, did not have her name on the lease, and did not treat Appellant's apartment as her sole residence. Appellant contends that these and other factors listed in *Williams* were not proven at trial, and thus, he and the victim were not cohabitating. Appellant believes that this was, at most, a case of simple assault and not domestic violence. Therefore, the case should have been dismissed.

**{¶6}** "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin-McCaffrey*, 2010-Ohio-617, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 2009-Ohio-1023, ¶ 14 (7th Dist.), citing *State v. Robinson*, 162 Ohio St. 486 (1955). When reviewing a conviction for sufficiency of the evidence, a reviewing court does not

determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 2015-Ohio-1882, ¶ 14 (7th Dist.), citing *State v. Merritt*, 2011-Ohio-1468, ¶ 34 (7th Dist.).

**{¶7}** In reviewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138 (1998). A conviction cannot be reversed on the grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.*

**{¶8}** The issue in this appeal is whether all the elements of misdemeanor domestic violence were satisfied. R.C. 2919.25(A) states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(F) defines "family or household member" (in part) as: "(1)(a) Any of the following who is residing or has resided with the offender: (i) A spouse, a person living as a spouse, or a former spouse of the offender[.]" A "person living as a spouse" is defined as: "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

**{¶9}** Appellant and the victim are not and have never been married, nor are they in a common law marriage relationship. Therefore, to prove domestic violence in this case, the state was required to show that Appellant and the victim were cohabiting when the crime occurred or had been cohabitating within five years of the offense.

Case No. 24 MA 0023

**{¶10}** Cohabitating is not defined in the domestic violence statute. It has been judicially defined a number of times. In 1997, the Ohio Supreme Court held "the essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams*, 79 Ohio St.3d 459, 465 (1997). In *Williams*, the defendant and the victim did not live together, but exhibited many aspects of an ongoing shared relationship. The court was tasked with determining whether the relationship was consistent with cohabitation. The court looked at such factors as shared responsibility for shelter, food, clothing, utilities, and whether the defendant and victim had commingled assets. *Id.* The court also looked at whether there was evidence of mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. *Id.* The court determined that: "[t]hese factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." *Id.*

**{¶11}** In 2014, the Ohio Supreme Court clarified the *Williams* holding. *State v. McGlothan*, 2014-Ohio-85, ¶ 13 (2014). *McGlothan* stressed that the additional factors set forth in *Williams* were used because the defendant and victim were not living together. "The victim's testimony that for a few months she stayed more nights at Williams's place than at her own further illustrates that they did not share a residence but rather that each had a separate residence." *Id.* "[I]in order to prove cohabitation when the victim and the defendant do not share the same residence, evidence of shared financial or familial responsibilities and consortium is required." *Id.* But when the victim and the assailant are proven to be in a romantic relationship and have lived together, the additional *Williams* factors do not have to be shown by the state. *Id.* at ¶ 15.

{¶12} We recently reviewed a case in which both *Williams* and *McGlothan* were relied on by the parties. *State v. Rossi*, 2024-Ohio-2566, ¶ 19 (7th Dist.). We held that evidence of shared financial or familial responsibility, and evidence of consortium, "are not required to be demonstrated when the victim testified to sharing a residence." *Id.* at ¶ 19. We also noted that the factors in *Williams* were nonexhaustive, and that some of the factors in *Williams* could also be used to prove that the parties were living together. The facts were similar to those in the instant case: the parties had been together for six or seven months; they lived with the defendant's mother, moved to an apartment, then moved to the victim's apartment where the crime occurred; the defendant kept his belongings at the victim's apartment; and the victim referred to the defendant as her live-in boyfriend. We principally relied on *McGlothan* when we held that cohabitation had been proven and the additional *Williams* factors did not need to be shown.

{¶13} In this case, the evidence showed that the parties were living together either continuously or on and off for a year prior to the crime. The victim stated: "I pretty much lived with him at his house." (1/31/24 Tr., p. 37.) She testified that she was in a romantic relationship with Appellant for one year. (1/31/24 Tr., p. 43.) She did not have her own residence. She had lived with her father for eight years prior to living with Appellant. She testified that her clothing was at Appellant's house, her personal items were there, and that they slept in the same bed. She only went back to her father's house after they broke up, which was a week before the crime. She was in possession of Appellant's garage door opener, which gave her full access to Appellant's entire house. The crime occurred when Appellant met the victim at her workplace to give her back her belongings, which she previously had kept at his house. The victim's friend Amanda testified that the victim's

personal property was at Appellant's house. Appellant threw the victim's clothing and personal possessions on the ground outside Advance Auto before he attacked her.

{¶14} Appellant himself testified that he had the victim's clothes in his car. He testified that she had his garage door opener, because she had parked her car in his garage. He testified that the garage door opener gave her access to his entire house. He admitted that they broke up because he caught her cheating on him, thus indicating that they were in an exclusive relationship. His testimony, combined with the victim's testimony about their living situation and the details of their relationship, is sufficient under the standards set forth in *Williams, McGlothan*, and *Rossi*, to prove that Appellant was cohabitating with the victim. Further evidence of the *Williams* factors was unnecessary.

{¶15} Appellant tries to distort the victim's testimony to urge that she did not live with him, and therefore the *Williams* factors needed to be proven. Although she said she "pretty much" lived with Appellant, the prosecutor asked follow-up questions to show that she kept her clothes and personal property at Appellant's home and they slept in the same bed. She said that she moved back to her father's house after she and Appellant broke up. That date was October 24, 2023, just a week before the domestic violence incident. Although it is possible to glean from this record that Appellant and the victim had broken up one or more times during the year they were together, the only dates in the record are the date they finally ended their relationship on October 24, 2023, and that they began their relationship in October of 2022. Based on the sufficiency of the evidence standard, the record reveals that the victim lived with Appellant for approximately a year; they broke up; and a week later he struck her across the face outside of her place of employment as she tried to pick up her belongings from him. Previously, he had kept her

personal possessions, including her clothing, at his house and they shared the same bed. She retained access to Appellant's apartment on the day of the crime, and Appellant still possessed her clothing and personal property when the crime occurred. Any rational juror could have found that the victim and Appellant were cohabiting under these facts.

**{¶16}** Appellant appears to argue that the state was required to prove Appellant and the victim lived continuously together for the entire time that they cohabitated until the final breakup on October 24, 2023. This is not a requirement of the domestic violence statute or of the related case law. The statute required, in this particular case, proof that the victim was a person living as a spouse with Appellant within five years of the crime. R.C. 2919.25(F)(2). There is no specific time frame contained in the statute as to how long the victim must live as a spouse, as long as it was within five years of the crime.

**{¶17}** The testimony in the *McGlothan* case was almost the same as the testimony in this case as to the length of the relationship: "[The victim] testified that at the time of the incident, McGlothan was her boyfriend and had lived with her in her apartment for 'about a year.' " *McGlothan* at ¶ 3.

**{¶18}** In another recent case affirming a domestic violence conviction, the testimony of an "on and off" relationship for eight months was sufficient to satisfy the "person living as a spouse" requirement: "The record shows T.A. testified that she and appellant were in a romantic relationship and lived together at her residence 'on and off, for eight months, from July 2019 until April 2020.' " *State v. Fanelli*, 2022-Ohio-3498, ¶ 51 (6th Dist.).

**{¶19}** Each domestic violence case must be viewed in light of its own unique fact pattern, and in this case it is clear that the victim and Appellant were in a romantic

relationship and living at Appellant's house either continuously or "on and off" for one year just prior to the attack. This satisfies the evidentiary requirements of the statute.

**{¶20}** Since cohabitation was proven, the essential element of "family or household member" in the domestic violence statute was satisfied. No further factors needed to be proven by the state to establish that the victim was a family or household member of Appellant. Appellant's sole assignment of error has no merit and is overruled.

## Conclusion

**{¶21}** Appellant argues that the state did not prove cohabitation, which is an essential element of domestic violence under the facts of this case. Appellant contends that the victim did not continuously live with Appellant in the five years prior to the occurrence of the crime and therefore, the state had to prove the additional factors of cohabitation as set forth in *Williams*, *supra*. The record reflects that the victim lived with Appellant for a year prior to the attack, kept her clothing and personal property in his home, kept her car in his garage, had full access to his house, and that they shared the same bed. Therefore, the state proved that they cohabitated, and there was no need to prove the additional *Williams* factors. Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

Hanni, J. concurs.

Dickey, J. concurs.

Case No. 24 MA 0023

[Cite as *State v. Joubert*, 2024-Ohio-5052.]

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the County Court #4, of Mahoning County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**