# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ZACHARY MARK-PHILLIP ROSSI,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0097**

---

Criminal Appeal from the
Mahoning County Court #4 of Mahoning County, Ohio
Case No. 2023 CR B 00158 AUS

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova,* Mahoning County Prosecutor*, Atty. Edward A. Czopur,* Assistant Mahoning County Prosecutor*,* Mahoning County Prosecutor's Office, for Plaintiff-Appellee and

*Atty. Michael P. Ciccone,* for Defendant-Appellant.

Dated: July 2, 2024

**Robb, P.J.**

**{¶1}** Defendant-Appellant Zachary Mark-Phillip Rossi appeals the decision of Mahoning County Court No. 4 finding him guilty of domestic violence after a bench trial. Appellant challenges the sufficiency of the evidence on the element of family or household member. He argues the state failed to show cohabitation. For the following reasons, Appellant's conviction is affirmed.

STATEMENT OF THE CASE

**{¶2}** On March 14, 2023, police officers were dispatched to an apartment in Austintown for a domestic disturbance. Based on their observations at the scene, they arrested Appellant for domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. At the bench trial, testimony was provided by the two responding police officers, the victim, and Appellant's mother.

**{¶3}** The first officer testified the victim was crying hysterically when he arrived and appeared to be in a constant state of fear while describing Appellant as her live-in boyfriend who attacked her after she accused him of cheating on her. (Tr. 7-9, 15). The victim reported the following events to the officer: Appellant initially struck her face near her mouth with a closed fist; he threw her phone across the room when she tried to call 911; he then delivered a series of punches, which landed on her face, head, and arms as she attempted to defend herself; and he threw her to the ground (injuring her lower back) and held her throat with one hand while striking her with the other hand. (Tr. 7-10). The officer described redness and bruising on the victim's face and a bleeding cut on her lip. (Tr. 7-8). He identified and reviewed photographs depicting injuries to the victim's lip, face, neck, and arm. (St.Ex. A-D). He also observed her shattered phone screen. (Tr. 9).

**{¶4}** The second officer who arrived at the scene testified he spoke with Appellant in the bedroom of the apartment where he was gathering his belongings. (Tr. 23-24). Appellant told him a friend would be picking him up. (Tr. 24). The prosecutor asked the officer whether he asked Appellant if he resided in that apartment, and the officer replied, "I believe so * * * I believe he said yes." (Tr. 25). On cross-examination,

the officer explained this type of question was his standard procedure. He also pointed out Appellant's address was listed as this apartment in the police report. (Tr. 26).

{¶5} The victim testified she was not married and had no children. She said Appellant had been her best friend for over 10 years and they were both 23 years old. (Tr. 28-30). According to the victim's testimony, they had been living together for six or seven months at the time of the March 14, 2023 offense. First, they spent four months living together at the house where Appellant's mother lived. Then, they moved to an apartment. They did not stay in that apartment long, and in March of 2023, they moved into the Austintown apartment where the offense occurred. (Tr. 30-31). The victim said Appellant did not contribute to food or rent during their apartment living. She described herself as his sole supporter, including by providing him with cash. (Tr. 31).

{¶6} The victim testified she reported to 911 that her boyfriend punched her in the mouth. (Tr. 31). She confirmed she was shaking and "hysterically crying, distraught, upset, and hurt" when the officers arrived. (Tr. 32, 34). When the prosecutor asked what her boyfriend did to her, the victim initially stated, "It started off with me confronting him about cheating." She mentioned, "We weren't sleeping together, were like just more – we weren't doing things a normal couple would do together." She then answered the question by explaining that ten seconds after confronting him about his cheating behavior, he used a closed fist to punch her in the mouth, which resulted in a "busted" and bleeding lip. (Tr. 33).

{¶7} Upon viewing her wound in the mirror, she started screaming at him to pack his belongings and leave (and then told him to leave his belongings and she would deliver them later). (Tr. 33-34). She tried to call 911, but he threw her phone, rendering it non-operational. (Tr. 35-36). The victim testified Appellant started punching her again, including in the side of her face where she suffered a bruised eye and swollen jaw. (Tr. 36). She ended up on the floor being "choked out, strangled, breathing, screaming, trying to gasp for air while he was punching me." (Tr. 37-38). She believed she was going to die. (Tr. 38-39). She managed to knee Appellant, flee the apartment, bang on other apartment doors, and find a neighbor to let her in to call the police. (Tr. 36-37, 39).

{¶8} On cross-examination, she confirmed her description of their relationship as "boyfriend/girlfriend." (Tr. 42). The defense presented the March 1, 2023 lease

Case No. 23 MA 0097

agreement for the Austintown apartment to show the victim was the only person listed as a tenant. Page two of the thirteen-page lease said the maximum occupancy was one person, and "NA" was typed in the blank where authorized occupants could be listed. (Tr. 43-45, 49). The defense also presented the rental application as an exhibit to show the victim listed her parents' address as her "Current Address" on January 3, 2023. The victim explained she was between residences and she was "free to come and go" to both her parents' residence and the residence of Appellant's mother. (Tr. 43-44, 53). She also pointed to her answer on this rental application that one person would be living with her, testifying this answer was referring to Appellant. The victim said the rental agent knew another person would be living with her and even asked her the name of the other occupant. (Tr. 51).

{¶9} The defense called Appellant's mother to the stand. She said the victim was her son's best friend who "periodically" stayed at her house when experiencing family issues. (Tr. 56-57). This witness said Appellant stayed with her in Youngstown "[l]ike five days a week, five nights a week" in March of 2023. (Tr. 57). Appellant's mother said her son's mail comes to her house, her cable bill is in his name, and one of his three children lives with her. (Tr. 58-59). She said Appellant only spent a couple of nights at the Austintown apartment and opined it was not his residence, saying his "stuff was at home except for some miscellaneous." (Tr. 59). She said her son performs roofing and tarring for a company and does odd jobs for the company when the weather does not allow for those tasks. (Tr. 60).

{¶10} The court found Appellant guilty of domestic violence and sentenced him to 180 days in jail with 120 days suspended and 24 months of probation with various requirements. (10/25/23 J.E.). The within appeal followed.

<u>ASSIGNMENT OF ERROR</u>

{¶11} Appellant sets forth the following assignment of error:

"The trial court committed reversible error when it found Defendant-Appellant, Zachary Mark-Phillip Rossi, guilty of Domestic Violence in violation of R.C. 2919.25, beyond a reasonable doubt when such a conviction was against the sufficiency of the evidence."

**{¶12}** Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82; *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

**{¶13}** In reviewing the sufficiency of the evidence, the court views the evidence, including reasonable inferences, in the light most favorable to the prosecution to ascertain whether "any" rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (consider all evidence in the light most favorable to the prosecution, including reasonable inferences); *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). *See also State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999) (viewing reasonable inferences in favor of the state). Circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001).

**{¶14}** The statutory elements required for Appellant's domestic violence conviction are as follows: knowingly cause or attempt to cause physical harm to a family or household member. R.C. 2919.25(A). Appellant contests whether the state sufficiently showed the victim qualified as a family or household member.

**{¶15}** In pertinent part, the statutory definition of "family or household member" includes "[a]ny of the following who is residing or has resided with the offender: (i) A spouse, a person living as a spouse, or a former spouse of the offender * * *." R.C. 2919.25(F)(1)(a)(i). The statute further defines "person living as a spouse" as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

**{¶16}** Appellant argues the state was required to but did not present evidence of the following two aspects of cohabitation: (1) sharing family or financial responsibilities (which entails a consideration of factors such as shelter, food, clothing, utilities, and commingling assets); and (2) consortium (which entails a consideration of factors such as mutual responsibility, fidelity, affection, society, cooperation, solace, comfort, aid, friendship, and conjugal relations). *Citing, e.g., State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997); *State v. Mauldin*, 7th Dist. Mahoning No. 08-MA-92, 2010-Ohio-4192, ¶ 31 (also observing, "The burden of establishing cohabitation is not substantial.").

**{¶17}** The state points out a more recent case clarified the state need not put forth evidence on these two items where the victim testified the offender was her boyfriend and she lived with him for a period of time before the offense. *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, 4 N.E.3d 1021, ¶ 1 (reinstating a domestic violence conviction and reversing an appellate court's application of *Williams* while finding there were no shared living expenses). The state points out the *Williams* holding was based on a case where the victim testified they did not live together (but where she was staying more nights at the defendant's house than at her house in the past few months). *Williams*, 79 Ohio St.3d at 460. The state concludes it had no obligation to show a sharing of responsibilities and consortium in order to prove cohabitation due to the victim's testimony that Appellant was her boyfriend with whom she had been living on the date of the offense and for the six or seven months prior to the offense. The state alternatively urges there was evidence on a sharing of responsibilities and consortium in any event.

**{¶18}** The domestic violence statute has been broadly applied to emphasize the parties' relationship as opposed to their precise living arrangements in that the term "family or household member" has *not* been narrowly construed to encompass only those who share one residential address. *McGlothan*, 138 Ohio St.3d 146 at ¶ 14, 17, citing *Williams*, 79 Ohio St.3d at 462, 464. "[I]n order to prove cohabitation when the victim and the defendant *do not* share the same residence, evidence of shared financial or familial responsibilities and consortium is required." (Emphasis added.) *Id.* at ¶ 13, citing *Williams*, 79 Ohio St.3d at 463-465.

**{¶19}** However, these two aspects of cohabitation are not required to be demonstrated when the victim testified to sharing a residence. In *McGlothan*, the victim

testified the defendant lived in her apartment for the past year (including on the day of the offense) "thus establishing that they did share one residence." *Id.* at ¶ 15. Accordingly, the Supreme Court concluded:

> Because the state demonstrated that the defendant was the victim's boyfriend and that they had lived together for about a year, the state had no obligation to demonstrate the sharing of familial or financial responsibilities and consortium to prove cohabitation in this case. Instead, based on Robinson's testimony, the trial court could have reasonably determined that the state established cohabitation and thus that Robinson was a person living as a spouse with McGlothan. Because the evidence also demonstrates that Robinson resided with McGlothan at the time of the incident, the trial court could have reasonably concluded that Robinson was a family or household member.

*Id.* (indicating the appellate court misapplied *Williams*).

{¶20} The *McGlothan* decision also pointed out the *Williams* case provided a "nonexhaustive list" of factors. *Id.* at ¶ 16. The Court then alternatively held, even under the inapplicable *Williams* holding, the record contained circumstantial evidence on shared familial or financial responsibilities (as they shared a shelter with utilities) and on the consortium factors (including affection, society, and aid). *Id.*

{¶21} As the state urges, sufficient evidence was presented to allow some rational person to find Appellant was residing with the victim under division (F)(1)(a)(i) of R.C. 2919.25 and to find the living arrangement qualified as cohabitation under division (F)(2) as interpreted by *McGlothan*. The victim testified they had been living together for six or seven months when the March 14, 2023 offense occurred. She discussed the following sequence of living arrangements: they lived with Appellant's mother for four months; they moved to an apartment in February of 2023; and a month later, they moved to the Austintown apartment where the offense occurred within weeks. A couple putting only one name on a lease does not eliminate a victim's attestation at trial that the couple lived together. Notably, the victim disclosed in writing to the property manager before moving in that another person would be living with her in the Austintown apartment. She testified she was referring to Appellant by making this disclosure.

Case No. 23 MA 0097

**{¶22}** Likewise, the victim described Appellant as her live-in boyfriend to the police officer who responded to the 911 call while the victim was still visibly upset and hysterically crying. The other officer saw Appellant attempting to gather his belongings from the bedroom of the apartment before they arrived to arrest him. This officer also testified to the following: he believed he asked Appellant if he lived in the Austintown apartment; he believed Appellant answered in the affirmative; it was his standard practice to ask this question; and the corresponding police report listed the Austintown apartment as Appellant's address. As outlined above, the sufficiency test does not involve a weighing of witness credibility, and circumstantial evidence inherently possesses the same probative value as direct evidence. *Yarbrough*, 95 Ohio St.3d 227 at ¶ 79, 82; *Treesh*, 90 Ohio St.3d at 485.

**{¶23}** Even applying the inapplicable *Williams* test, there was additional direct and circumstantial evidence demonstrating both a sharing of responsibilities and consortium. We note the analyzed responsibilities can be either financial or familial. *McGlothan*, 138 Ohio St.3d 146 at ¶ 15; *Williams*, 79 Ohio St.3d at 465. In addition to the aforementioned facts on their relationship and historical living arrangements, the victim testified Appellant was not working at the time, she provided him with money, and she was his sole supporter. The victim said Appellant was not contributing to food or rent while living in the apartment they shared. A sharing of responsibilities does not necessarily mean both parties must contribute money. One person in a couple can share the shelter they pay for by letting the other person move in with them, resulting in the couple "sharing" a shelter (with utilities), as opposed to merely one visiting the other's residence. *See generally Williams*, 79 Ohio St.3d at 465 (holding the factors related to cohabitation are unique to each case and the weight to be assigned to each factor is left for the fact-finder); *Mauldin*, 7th Dist. No. 08-MA-92 at ¶ 36 (finding the evidence demonstrated more than simply visiting each other's houses). *Compare McGlothan*, 138 Ohio St.3d 146 at ¶ 24 (French, J., dissenting) (seemingly arguing there should be evidence the defendant actually contributed to the household). Moreover, through her testimony about hoping to retrieve her car keys before he drove her car away after the assault, the victim indicated her belief that Appellant felt entitled to drive the vehicle that belonged to her. There was sufficient evidence on the sharing of family or financial responsibilities in this case.

**{¶24}** As to consortium, in addition to describing Appellant as her long-time best friend, the victim said he was her live-in boyfriend. The fact that she mentioned they "weren't sleeping together * * * we weren't doing things a normal couple would do together" does not, as a matter of law, mean they were not cohabiting or that the relationship lacked the quality of consortium. Notably, this statement was made in the context of her disclosure related to her concerns about Appellant's infidelity. The victim reported, and thereafter testified, that Appellant attacked her after she accused him of cheating on her. In addition to society, companionship, and friendship, fidelity is a factor that can be considered in evaluating the existence of consortium. Hence, arguments over infidelity constitute evidence of consortium. Furthermore, an outburst of anger and violence prompted by an accusation of cheating is circumstantial evidence of a relationship with a consortium feature. We also note the victim's statement ("we weren't sleeping together") read in context could be interpreted as a temporary situation caused by the cheating issue she was discussing. In any event, the sexual aspect of "conjugal relations" would merely be one consideration when consortium is at issue; a couple need not be engaging in sex acts to be considered a part of a domestic relationship with the consortium feature. *See McGlothan*, 138 Ohio St.3d 146 at ¶ 16 (non-exhaustive list of factors); *Williams*, 79 Ohio St.3d at 465 (using permissive terms such as "Possible factors" or "Factors that might establish" when listing potentially relevant considerations). Additionally, as the state further emphasizes, defense counsel expressly conceded the existence of consortium in closing arguments at trial (while claiming there was no sharing of family and financial resources). (Tr. 65) ("consortium which we will concede in this case").

**{¶25}** Viewing the evidence in the light most favorable to the prosecution, a rational person could find beyond a reasonable doubt that the victim was a family or household member of Appellant. In accordance, Appellant's sufficiency argument is without merit.

**{¶26}** Observing that Appellant's brief contains arguments on credibility or contradictions in evidence, we point out sufficiency of the evidence and weight of the evidence are distinct concepts with different definitions and tests. *Thompkins*, 78 Ohio St.3d at 386-387. Weight of the evidence concerns the effect of the evidence in inducing

belief, and our review would evaluate "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Id.* at 387. The question of weight asks whether the state met its burden of persuasion (as opposed to the state's burden of production involved in a sufficiency review). *Id.* at 390 (Cook, J., concurring). When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387.

**{¶27}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "We therefore generally proceed under the premise that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we do not choose which one we believe is more credible." *State v. Carter*, 2017-Ohio-7501, 96 N.E.3d 1046, ¶ 105 (7th Dist.), citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999).

**{¶28}** The factors related to cohabitation "are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." *Williams*, 79 Ohio St.3d at 465. Contrary to Appellant's suggestion, the fact that the twenty-three-year-old victim listed her parents' address on a rental application did not diminish her credibility at the trial. She noted she was free to come and go at the house of her parents and the house of Appellant's mother. Likewise, Appellant continued to receive his mail at his mother's house, but this did not mean he did not continue to live with the victim (after they moved from his mother's house to an apartment or after they moved a month later to a different apartment). The fact that Appellant's mother said the victim "was periodically" staying at her house with Appellant does not require a court to find the victim lacked credibility when she said Appellant was her live-in boyfriend with whom she lived for six or seven months. Moreover, the trier of

fact was not required to believe Appellant stayed at his mother's house five nights a week in March of 2023; it was mid-March when Appellant was removed from the apartment during his arrest.

**{¶29}** The trial court saw the testimony as it was presented at trial and occupied the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The trial court reasonably concluded the victim was a family or household member of Appellant as the state's version of the evidence corresponding to the cohabitation aspect of this element was "not unbelievable." *See State v. Yerkey*, 7th Dist. Mahoning No. 23 MA 0057, 2024-Ohio-724, ¶ 31 (where there are two reasonable interpretations of the evidence, we may not exercise discretion to choose a version at odds with that chosen by the trial court who presided over the bench trial). Therefore, the decision to find Appellant guilty of domestic violence was not contrary to the manifest weight of the evidence.

**{¶30}** For the foregoing reasons, Appellant's assignment of error is overruled, his domestic violence conviction is upheld, and the trial court's judgment is affirmed.

Hanni, J., concurs.

Dickey, J., concurs.

Case No. 23 MA 0097

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Mahoning County Court #4 of Mahoning County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**