[Cite as *State v. Branch*, 2026-Ohio-664.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 00039 |
| Plaintiff – Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2024 CR 2546 |
| ERIC BRANCH | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: February 26, 2026 |

**BEFORE:** ANDREW J. KING, P.J., WILLIAM B. HOFFMAN, J., KEVIN W. POPHAM, J.; Appellate Judges

**APPEARANCES:** KYLE L. STONE, CHRISTOPHER A. PIEKARSKI for Plaintiff-Appellee; D. COLEMAN BOND, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}   Defendant-Appellant Eric Branch ("Branch") appeals his conviction and sentence for domestic violence following a bench trial in the Stark County Court of Common Pleas. For the reasons below, we affirm.

**Facts and Procedural History**

{¶2}   On December 20, 2024, the Stark County Grand Jury indicted Branch on one count of attempted murder, a first-degree felony in violation of R.C. 2923.02 and 2903.02(B)/(D); one count of kidnapping, a first-degree felony in violation of R.C. 2905.01(B)(2)/(C)(1); two counts of felonious assault, second-degree felonies in violation

of R.C. 2903.11(A)(2)/(D)(1)(a); one count of domestic violence, a third-degree felony in violation of R.C. 2919.25(A)/(D)(4); and one count of abduction, a third-degree felony in violation of R.C. 2905.02(A)(2)/(C).

{¶3}   On March 4, 2025, Branch executed a written waiver of jury trial as to the domestic violence charge only. The State dismissed the kidnapping and abduction counts. Following trial, the jury acquitted Branch of attempted murder and both felonious-assault charges. The trial court found Branch guilty of domestic violence.

{¶4}   The evidence at trial established the following.

**The Victim's Testimony**

{¶5}   P.H. testified that she and Branch were in a romantic relationship for approximately one year and lived together intermittently for about six months in a single room of a boarding house in Canton, Ohio. *1T. at 115-116*. She described multiple assaults by Branch occurring between early November and early December 2024.

{¶6}   The first incident occurred in early November 2024. After becoming angry, Branch grabbed P.H. by the throat, slammed her head into a garage door, then lifted her and slammed her head down onto the concrete floor. Although bleeding, P.H. did not seek medical attention or contact police. P.H. testified that she remained with Branch. *1T. at 120-122.*

{¶7}   A second incident occurred in mid-November at their residence. While P.H. lay on her side, Branch struck the back of her head with a thick wooden board and threatened to kill her if she repeated certain statements. P.H. testified she was stunned and saw "stars." *1T. at 122-125*. Afterward, Branch forced P.H. to leave the residence, fearing police involvement. Approximately twenty minutes later, during an argument

outside, Branch struck P.H. in the face with the blunt end of a screwdriver and scratched her leg with the tool. *1T. at 126-127, 137-138*. P.H. testified that when she attempted to leave, Branch chased her and took her shoes. She fled to her friend J.M.'s home, where she stayed for several days before returning to Branch.

{¶8} A third incident occurred in late November or early December. Branch punched P.H. in the face or chin and told her he had been "holding that one in for two days." *1T. at 128-129*. Shortly thereafter, P.H. testified that she left and went to stay with J.M.

{¶9} P.H. testified that she arrived at J.M.'s home on December 1, 2024. For the first day or two P.H. appeared normal but then became increasingly fatigued. *1T. at 131-132*. She recalled leaving with a friend to go to a store several days later and then waking up in the hospital. *Id. at 132.* P.H. testified that hospital staff informed her she had been placed in a medically induced coma and underwent emergency surgery for a brain bleed that caused significant swelling and vision impairment. *Id. at 133.* P.H. testified she continues to suffer pain and scarring. *Id. at 134-136.*

**Testimony of J.M.**

{¶10} J.M. testified that she lived near the boarding house and knew both P.H. and Branch from the neighborhood. *1T. at 169.* She confirmed that P.H. came to her home on December 1, 2024, at 5:02 p.m., followed by Branch one minute later. *Id. at 171-173.* Ring doorbell footage of both P.H. and Branch's arrivals at J.M.'s home was admitted into evidence. *Id.*

{¶11} P.H. stayed with J.M. for several days. J.M. testified that during the first two days, P.H. seemed normal, but her condition deteriorated over the next several days. *1T.*

*at 175-176*. J.M. testified that by December 9, 2024, P.H. was unable to walk steadily, could not speak clearly, and exhibited abnormal eye movement. *Id. at 176-177.* Although there were no visible external injuries, J.M. and a male friend, J.W. - who also lived with J.M., took P.H. to the hospital. *Id.* J.M. dropped both J.W. and the victim off at the hospital and then returned home. *Id. at 177.*

**Law Enforcement and Medical Testimony**

{¶12} Detective Phillip Johnson testified that he responded to Mercy Hospital on December 9, 2024, after staff reported a domestic violence victim. *1T. at 188.* Hospital personnel indicated to Detective Johnson that P.H. had been assaulted by her boyfriend with a screwdriver. *Id. at 188-189.* Johnson testified that he traced a vehicle license plate to J.M., obtained Ring footage, and interviewed witnesses. *Id. at 189-190.*

{¶13} Forensic nurse Susan Baldwin, R.N., testified that she evaluated P.H. in the Intensive Care Unit ("ICU") on December 11, 2024. *1T. at 207-208*. She identified medical records and photographs showing swelling caused by brain trauma. *Id. at 208-209, 211-213.* Nurse Baldwin testified that P.H. reported being struck in the head with a wooden object by Branch and stated she knew immediately something was wrong. Nurse Baldwin testified that P.H. recalled little after the assault until waking in the ICU. *Id. at 214-215.*

**Disposition**

{¶14} Branch did not testify or present evidence. As relevant to this appeal, the trial court found Branch guilty of domestic violence and imposed a 36-month prison sentence.

**Assignment of Error**

{¶15} Branch raises one assignment of error for our consideration,

{¶16} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT FOR THE OFFENSE OF DOMESTIC VIOLENCE, AND THE CONVICTION MUST BE REVERSED."

{¶17} In his sole assignment of error, Branch contends that the State presented insufficient evidence to support his conviction for domestic violence. Specifically, he argues the State failed to prove that he and P.H. were "family or household members," an essential element of the offense. We disagree.

### Standard of Review — Sufficiency of the *Evidence*

{¶18} Sufficiency of the evidence presents a question of law that we review de novo. *State v. Walker*, 2016-Ohio-8295, ¶ 30. The relevant inquiry is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). This review does not involve weighing evidence or assessing witness credibility. *Id*. A conviction will be reversed on sufficiency grounds only where reasonable minds could reach but one conclusion— acquittal. *State v. Ketterer*, 2006-Ohio-5283, ¶ 94.

### Governing Law and Application

{¶19} To sustain a conviction for domestic violence, the State was required to prove that Branch and the victim were "family or household members." R.C. 2919.25(A). As relevant here, that term includes a "person living as a spouse," defined as one who is

cohabiting or has cohabited with the offender within five years of the offense. R.C. 2919.25(F)(1)(a), (F)(2).

{¶20} Cohabitation is established by proof of (1) shared familial or financial responsibilities and (2) consortium. *State v. Williams*, 79 Ohio St.3d 459, 465 (1997), paragraph two of the syllabus. Relevant considerations include shared shelter and daily living arrangements, as well as mutual affection, companionship, and cooperation. *Id*. The weight of these factors is determined on a case-by-case basis by the trier of fact. *Id.*

{¶21} Here, P.H. testified that she and Branch were in a romantic relationship for at least one year and lived together on and off for approximately six months in the same boarding-house room. This testimony alone was sufficient to establish cohabitation. A majority of the Supreme Court of Ohio has held that where the evidence shows a romantic relationship and shared residence for an extended period, the State is not required to separately prove shared financial responsibilities or additional indicia of consortium. *State v. McGlothan*, 2014-Ohio-85, ¶ 15. *See also State v. Martin*, 2016-Ohio-225, ¶ 67 (5th Dist.); *State v. Soto,* 2025-Ohio-1788, ¶ 28 (5th Dist.). In *McGlothan* the parties had shared one residence for "about a year." 2014-Ohio-85, ¶15. *See also State v. Rossi,* 2024-Ohio-2566, ¶ 21 (7th Dist.) (The victim testified they had been living together for six or seven months when the offense occurred); *State v. Schwegmann*, 2018-Ohio-3757, ¶ 18-19 (1st Dist.) (finding sufficient evidence of cohabitation where the defendant and the victim had been dating for six months and the defendant lived with the victim for a month prior to the domestic violence).

{¶22} Viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Branch and P.H. were cohabiting at the

time of the offense and therefore qualified as family or household members under R.C. 2919.25.

{¶23} Accordingly, the evidence was sufficient to support Branch's conviction for domestic violence, and his sole assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to be paid by Appellant Eric Branch.

By: Popham, J.

King, P.J. and

Hoffman, J., concur